UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAYMOND J. BERGERON DAVILA,

                Plaintiff,

v.                                           Case No. 23-cv-1260-pp

DEION MARQUEZ,

                Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (DKT. NO. 22), DENYING PLAINTIFF'S MOTIONS FOR SANCTIONS AND DEFAULT JUDGMENT (DKT. NO. 38), DENYING AS MOOT PLAINTIFF'S FIRST MOTION TO STAY AND MOTION FOR ORDER (DKT. NO. 43) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S SECOND MOTION TO STAY (DKT. NO. 44)**

        Plaintiff Raymond J. Bergeron-Davila, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his constitutional rights. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim against defendant Officer Deion Marquez based on allegations that the plaintiff told the defendant he was suicidal and was going to cut himself, but the defendant walked away from the plaintiff's cell and the plaintiff cut himself, causing injury. Dkt. No. 24 at 5. This order addresses the plaintiff's motion for injunctive relief, dkt. no. 22, motions for sanctions and default judgment, dkt. no. 38, motions to stay, dkt. nos. 43 and 44, and motion for order to grant motion for injunctive relief, dkt. no. 43.

1

## I. Motion for Injunctive Relief (Dkt. No. 22)

On February 1, 2024, the court received from the plaintiff a motion asking for an "emergency court order." Dkt. No. 22. According to the plaintiff, Green Bay "now has a walk away rule on [him] when [he is] cutting very badly[.]." Id. at 1. The plaintiff states that under this new rule, staff have walked away from his cell while he is harming himself. Id. He asks the court to issue an order requiring staff to pull him out of his cell, strip search him, remove his weapon and stop walking off when he is self-harming. Id. at 2.

The defendant responds that the court should deny the plaintiff's motion because "Green Bay has never and does not currently have any policy or practice where staff walk away from an inmate who is actively self-harming." Dkt. No. 29 at 2. The defendant states that Green Bay staff take all threats and acts of self-harm seriously and when an incarcerated individual even threatens self-harm, there are protocols and procedures in place to procure assistance and protect the individual. Id. The defendant contends that it is absurd to suggest that Green Bay has a policy that directs staff to disregard individuals actively engaging in serious self-harm and asserts that the plaintiff can present no evidence that there has been or is any such policy. Id.

The defendant submitted the declaration of Dr. Martha Breen-Smith, a licensed psychologist at Green Bay, who avers that if an incarcerated individual has an urgent psychological health need, he can inform a staff member who then will call the psychological services unit (PSU) as soon as possible. Id. at 3. According to Breen-Smith, there is no "walk away" policy at Green Bay—toward

2

the plaintiff or any incarcerated person. Id. Breen-Smith says that because the plaintiff has engaged in inappropriate behavior with her and other staff members, if the plaintiff engages with her when she walks past his cell, she lets him know that she is going to inform security first and, if necessary, return to his cell with an officer. Id. She states that staff can use this practice with all incarcerated individuals, not just the plaintiff; she asserts that this is not "walking away" but asking a member of security to go to the plaintiff's cell to find out what he wants. Id. at 3-4. If it turns out that the plaintiff (or another incarcerated individual) seeks psychological health resources, Breen-Smith returns to the cell to address that need. Id. at 4.

Dr. Breen-Smith states that if the plaintiff was actively engaging in self-harm, she would ask him to stop, after which she would have to leave his cell to inform security of the situation because she could not remove him from his cell on her own. Id. at 4-5. Breen-Smith states that the plaintiff was placed in observation status on the following dates in January 2024: January 4, 5, 6, 9, 12, 15, 21, 27 and 29. Id. at 5. She describes the general care that incarcerated individuals receive while in observation status, but she says that because defense counsel does not yet have a signed medical authorization from the plaintiff allowing access to his medical and psychological records, she cannot go into specific details about the care he received. Id. at 6. Breen-Smith states that she never has intentionally walked away from the plaintiff while he is self-harming and that, to her knowledge, staff have never done so either. Id. She

3

reiterates that there is no policy at Green Bay that staff should walk away from the plaintiff while he is self-harming. Id. at 6-7.

The defendant also submitted the declaration of Marcus King, a supervising officer 1 (lieutenant) at Green Bay, who avers that he is not aware of any policy or rule directing staff to "walk away" from the plaintiff while he is self-harming. Id. at 7. Lieutenant King states that the plaintiff has a history of self-harm and being placed into observation status. Id. at 8. He states that he never has just walked away from the plaintiff while the plaintiff was self-harming without following up with the situation. Id. According to King, if staff walked away from the plaintiff's cell while he was self-harming, it would have been to notify other departments of the situation, recruit additional staff members or obtain security tools to use to remove the plaintiff from his cell. Id.

The plaintiff replies that Green Bay staff do have a "walk away rule" on him when he is cutting and "just because two declarations by Lt. King and Dr. Breen Smith say otherwise, should not hold true." Dkt. No. 33 at 2. The plaintiff states that if videos had been produced, they would show his side. Id. The plaintiff also states that the court should not believe Breen-Smith's assertion that the plaintiff has engaged in inappropriate conduct such as exposing himself to her and that her statement was a method to embarrass the plaintiff and distract the court. Id. at 2-3. The plaintiff states that he never has received an incident report or conduct report for exposing himself to Breen-Smith. Id. The plaintiff also contends that King tries to distract the court by describing the plaintiff's alleged motivation for engaging in self-harm. Id. at 4-

4

5. He argues that the defendant does not dispute the "walk offs" on January 11 and January 20, 2024, and contends that those are "uncontested." Id. at 6. He insists that the court should grant an injunction, saying that "it won't hurt to put it in place[.]" Id.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, the plaintiff must show that (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Mays, 974 F.3d at 818 (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

Because the plaintiff is incarcerated, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the

5

PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted)).

The plaintiff has not established that Green Bay has a "walk away" policy under which staff walk away from him while he is engaging in self-harm. The defendants have explained that when the plaintiff (or any other incarcerated individual) engages in self-harm, staff first ask him to stop. If he does not stop, the staff member may have to temporarily leave the cell to alert other staff members and/or obtain security tools, but this does not mean the staff member is ignoring the plaintiff. The plaintiff references a video that he says will support his position, but he does not explain what the video will show. Again, just because a staff member leaves the plaintiff's cell while he is engaging in self-harm does not mean that the institution has a policy of ignoring the plaintiff while he harms himself. Institution staff have security issues to consider before removing any incarcerated person—including the plaintiff—from his cell and placing him in observation status. The court will deny the plaintiff's motion for injunctive relief.

**II. Motions for Sanctions and Default Judgment (Dkt. No. 38)**

The plaintiff has filed a motion for sanctions in which he states that the defendant submitted declarations in bad faith in support of his opposition to the plaintiff's motion for injunctive relief. Dkt. No. 38 at 1-2. According to the plaintiff, paragraph 10 of Dr. Breen-Smith's declaration "contains intentional falsehood designed to defraud the courts of a favorable ruling in defendant's position, as Martha Breen-Smith's allegations that "Bergeron-Davila has a history of exposing himself to me . . . ". Id. at 2. The plaintiff states that he has not received a conduct report for exposing himself and he has submitted a declaration stating as much. Id. at 3.

The plaintiff claims that the declaration of Marcus King contains an intentional falsehood designed to defraud the court in that he alleged, ". . . when an inmate is actively engaging in self-harm, security staff is required to try and stop the behavior . . . The contraband that the inmate was using to self-harm would be taken away" and "I am not aware of any policy or rule at Green Bay directing staff to 'walk away' from Bergeron-Davila while he is self-harming. As a supervisor, I have never been informed of such a policy." Id. at 3-4. The plaintiff states that King and his staff continue to walk away from the plaintiff while he self-harming and did so on April 22, 2024. Id. at 4.

The plaintiff contends that he is entitled to default judgment, monetary sanctions and/or referral of this case for prosecution for perjury. Id. at 7-9. The plaintiff states that a "false sex allegation" was made just to help make a fabricated declaration. Id. at 7.

The defendant responds that there is no evidence that the defendant willfully abused the judicial process or conducted litigation in bad faith. Dkt. No. 41 at 3. According to the defendant, the plaintiff misunderstood Dr. Breen-Smith's declaration, which did not state that the plaintiff received conduct reports for exposing himself to Breen-Smith but stated that the plaintiff "has a history of exposing himself to [Breen-Smith] and other staff and engaging in threatening and sexual talk." Id. at 2. The defendant states that the plaintiff is incorrect when he asserts that Breen-Smith's declaration contains false information. Id. The defendant maintains that King stands by his statements that he is not aware of any policy or rule at Green Bay directing staff to "walk away" from the plaintiff while he is self-harming. Id. The defendant asserts that, as a supervisor, King never has been informed of such a policy and has never enforced such a policy. Id. The defendant contends that because neither Breen-Smith's nor King's declaration contains falsehoods or fabrications, the court should deny the plaintiff's motion for sanctions and motion for default judgment. Id. at 2-3.

The court has inherent authority to impose sanctions "premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." Ramirez v. T & H Lemont, Inc., 845 F.3d 772, 76 (7th Cir. 2016). The plaintiff has not demonstrated that Dr. Breen Smith or Lieutenant King submitted false evidence, nor has he shown that the defendant engaged in misconduct. The defendant is correct—Breen-Smith did not say that the plaintiff had received a conduct report. And King

8

explained that while staff may "walk away" from a cell after an individual reports self-harming to get help or back-up, that does not mean Green Bay has a policy to simply walk away from individuals when they self-harm. The court will deny the plaintiff's motion for sanctions and default judgment.

### III. Motions to Stay and Motion for Order (Dkt. Nos. 43, 44)

On July 11, 2024, the court received from the plaintiff his first motion to stay all court proceedings based on ongoing settlement discussions. Dkt. No. 43 at 1-2. The plaintiff asks the court to grant his motion for injunctive relief before it stays the case. Id. He states that defense counsel said he would file a joint motion to stay court proceedings. Id. On the same day, the court received from the plaintiff a second motion to stay proceedings in which he says he believes the parties are close to reaching a settlement. Dkt. No. 44.

The court will deny as moot the plaintiff's first motion to stay court proceedings because the second motion duplicates it. Because this order denies his motion for injunctive relief, the court will deny the plaintiff's motion for an order to grant the motion for injunctive relief.

The court will deny without prejudice the plaintiff's second motion to stay court proceedings. The plaintiff has stated that the defendant will be filing a joint motion to stay. The court will await that motion. The court advises the parties that if they jointly request to stay the case for settlement discussions, the court will grant a stay.

### IV. Conclusion

The court **DENIES** the plaintiff's motion for injunctive relief. Dkt. No. 22.

9

The court **DENIES** the plaintiff's motions for sanctions and default judgment. Dkt. No. 38.

The court **DENIES AS MOOT** the plaintiff's first motion to stay and **DENIES** his motion for order granting injunctive relief. Dkt. No. 43.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's second motion to stay. Dkt. No. 44.

Dated in Milwaukee, Wisconsin this 18th day of July, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**