UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAYMOND J. BERGERON-DAVILA,

                    Plaintiff,

     v.                          Case No. 23-cv-1260-pp

DEION MARQUEZ,

                    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 46), DENYING PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 47), DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 48), DENYING PLAINTIFF'S MOTION FOR ORDER TO VIEW PRISON RECORDS (DKT. NO. 50), DENYING AS MOOT PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 53), DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 54), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 60), DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 62), DENYING PLAINTIFF'S MOTION FOR EMERGENCY ORDER (DKT. NO. 64), GRANTING PLAINTIFF'S MOTION FOR ORDER ON PENDING MOTIONS (DKT. NO. 66), DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 69), DENYING AS MOOT PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 69), DENYING PLAINTIFF'S MOTION FOR ORDER REGARDING DEFENDANT'S RESPONSE AND VIDEO EVIDENCE PRESERVATION (DKT. NO. 72)**

     Plaintiff Raymond J. Bergeron-Davila, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that defendant Deion Marquez violated his constitutional rights. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim against the defendant based on allegations that on July 4, 2023, the plaintiff told the defendant that he was suicidal and was going to cut himself, but the defendant walked away from the plaintiff's cell; the plaintiff alleged that he then cut himself, causing

1

injury. Dkt. No. 24 at 5. The defendant answered the complaint, dkt. no. 36, and the court issued a scheduling order, dkt. no. 37. In the following two months, the plaintiff filed three motions (dkt. nos. 38, 43, 44); the court denied those motions (dkt. no. 45). Since then, the plaintiff has filed several more motions; in less than one month, the court received six motions from the plaintiff; it received another three in a one-month period and another three in another one-month period.

This order addresses all but one of the plaintiff's many motions. The court received the most recent motion on March 5, 2025. Dkt. No. 76. Under the court's local rules, the defendant has twenty-one days in which to respond to that motion. It is premature for the court to rule on it in this order.

## I. Motion for Order (Dkt. No. 46)

The plaintiff first asked the court for permission to talk to, interview and gather declarations/affidavits from incarcerated individuals who he said overheard the plaintiff make suicidal statements. Dkt. No. 46 at 1. He also asked for permission to interview the defendant. Id. at 2. The plaintiff stated that he also needed the court's help to communicate better with defense counsel; he said that as of the date he filed his motion, defense counsel had not been responding to his letters. Id. at 4.

The defendant responded that he did not oppose the plaintiff's request to correspond with other incarcerated individuals who may have information about the case, because the plaintiff always has been allowed to speak with witnesses. Dkt. No. 52 at 1-2. Defense counsel stated that he never had denied

the plaintiff the opportunity to depose the defendant, but he pointed out that the plaintiff would be required to comply with the Federal Rules of Civil Procedure to do so. Id. at 2. Regarding communication with defense counsel, counsel stated that the court's assistance was not necessary because he and the plaintiff had communicated by phone, letters and discovery (just not always on the plaintiff's timeline). Id. at 2-3.

The plaintiff has not shown that he needs a court order to communicate with other incarcerated individuals or that he needs assistance in communicating with the defendant's lawyer. The plaintiff probably cannot comply with the procedural rules for deposing the defendant, see Fed. R. Civ. P. 30 (requiring a party seeking a deposition to give written notice of the deposition, arrange for having the deposition recorded and pay the cost of that recording and arrange for an "officer appointed or designated under Rule 28" to be present), he *may* ask the defendant for information through "interrogatories" (written questions, governed by Fed. R. Civ. P. 33), requests for the defendant to provide him with documents (governed by Fed. R. Civ. P. 34) and "requests for admission" (where, under Fed. R. Civ. P. 36, the plaintiff may write out factual statements and then ask the defendant to either "admit" them, "deny" them or state that the defendant does not have enough information to admit or deny them). The court will deny the plaintiff's motion for order.

## II.     Motion for Order (Dkt. No. 47)

The same day that the court received the motion discussed above, the court received from the plaintiff another "motion for order," in which he says

3

that Green Bay Correctional Institution was not providing him with his mail. Dkt. No. 47 at 1-2. He explained that he recently was at the law library and saw a ruling on his motion for preliminary injunction but he had not received his copy of the court's order addressing the motion. Id. at 2. The court will include a copy of that order (Dkt. No. 45) along with this order. The plaintiff stated that he also needed help with his outgoing mail because he had sent a letter to defense counsel but it appeared that counsel didn't receive it, otherwise counsel would have gotten back to the plaintiff. Id. at 3. The plaintiff asked the court to send him a copy of the injunction order. Id. at 4.

Defense counsel responded that he was not aware of any mail issues at Green Bay, but that he would discuss this with the plaintiff when the plaintiff and defense counsel talk on the phone. Dkt. No. 52 at 3. The defendant stated that as to the letters the plaintiff sends to counsel, counsel cannot answer every letter or call immediately. Id. Counsel pointed out that this was especially true considering the number of letters, motions and calls the plaintiff initiates, including having his family members contact the defendant's counsel on his behalf. Id. Defense counsel reiterated that he expected that he and the plaintiff would be able to work out these issues when they talk on the phone in the next week (the defendant's response is dated August 30, 2024). Id. The plaintiff did not file a reply.

The plaintiff has not demonstrated that there are any ongoing problem with mail at Green Bay. It appears from the court's own docket that the plaintiff is impatient. The court strongly encourages him to try to be more

4

patient. Mail takes time to get to defense counsel and to the court. Defense counsel has many other cases, not just the plaintiff's, as does the court. It has taken the court longer than it would like to address the plaintiff's many motions. Just because the plaintiff does not hear from defense counsel or the court immediately does not mean that he is being ignored or forgotten. The court will deny the plaintiff's motion for an order regarding his mail.

## III.    Motion to Compel (Dkt. No. 48)

Two weeks after the court received the above two motions, the court received from the plaintiff a motion to compel, in which he asserted that the defendant had provided incomplete and evasive responses to his discovery requests. Dkt. No. 48 at 1-2. The plaintiff stated that the defendant had not responded to his request for a more complete response. Id. at 2. He asserted that the defendant's response to his request for admission number 7 was inadequate because the defendant did not provide a "yes or no" answer.[1] Id. at 3. The plaintiff also argued that the defendant's response to his request for admission number 8 was inadequate because the defendant had evaded the

---

[1]    Request for Admission 7: Defendant Marquez admit that the initial handwritten complaint dated 7-12-23 does request that all of 300 wing wall camera footage and Officer Cummin and Marquez's body cam footage be preserved.

RESPONSE: Counsel for defendant OBJECTS to this request on the ground that it requires speculation on the part of the defendant to respond. Notwithstanding and without waiving said objection, in the event Plaintiff is referring to inmate compliant GBCI-2023-10289, Defendant asserts that the document speaks for itself.

Dkt. No. 49-1 at 2-3.

request by saying that he lacked knowledge about whether the plaintiff had asked for the video evidence be preserved.[2] Id. at 5.

The defendant advised the court that he had responded to the plaintiff's questions as best he could. Dkt. No. 56 at 2. He stated that request 7 was incomplete and required speculation on the defendant's part to answer because it did not sufficiently identify the document or "complaint" to which the plaintiff was referring, so the defendant could not answer only "yes or no." Id. Regarding request 8, the defendant stated that although the plaintiff had asked the defendant if the plaintiff had submitted certain documents requesting video be preserved, the defendant has nothing to do with video preservation. Id. He advised the court that because he—the defendant—plays no part in video preservation, he would not be aware of whether the plaintiff submitted video preservation requests or what any of those requests would have contained. Id.

The defendant appropriately and reasonably responded to the plaintiff's discovery requests. Not every question can be answered with a simple "yes" or "no." The court itself cannot determine whether Request for Admission #7 refers to the complaint the plaintiff filed in this lawsuit (it appears not, because that complaint was dated September 22, 2023 and the request mentions a

---

[2]     Request for Admission 8: Admit that the Plaintiff did submit a DOC-0643 request form on 7-25-23 requesting for video footage from correction Officer Marquez['s] body camera within time frames 2:30pm up to 4:30pm.

      RESPONSE: LACK KNOWLEDGE as Defendant is a Correctional Officer and does not receive or review video requests, nor does he preserve videos.

Dkt. No. 49-1 at 3.

handwritten complaint dated July 12, 2023) or a grievance the plaintiff filed through the prison (in which case the plaintiff did not provide a grievance number). It appears that the defendant took an educated guess that the plaintiff was referring to the grievance referenced in the answer and said, basically, that that grievance says what it says. As for Request #8, it is acceptable for a party to answer a request for admission by saying that he does not have information sufficient to allow him to answer. Though there may be others at the prison with knowledge of requests for video footage, the defendant isn't one of them and it was appropriate for him to answer that, basically, he didn't have information that would let him answer that question. The court will deny the motion to compel.

## IV.    Motion for Order to View Prison Records (Dkt. No. 50)

A couple of days after the court received the plaintiff's motion to compel, it received from him another "motion for order," asking the court to give "a permission-Slip-Like-Court Ruling saying That the plaintiff Is Allowed to See His own prison records" because his requests to prison staff had been ignored. Dkt. No. 50 at 1. He stated that he was overdue for a file review pass for his "PSU File review (mental Health records), Incident report File review, a review of OBS Check Doc-112 Log file reviews, Inmate Complaint file review request, and the files that contain plaintiff's VIDEO Evidence preservation request record/files." Id. at 2. The plaintiff asserted that he needed access to his prison records and that the court should not treat his request as a discovery request. Id. at 2-3. He said that he needed documents in those records to support

upcoming summary judgment motions. <u>Id.</u> at 4. The defendant responded that the court should deny the plaintiff's motion because the plaintiff had received nearly everything he had asked for in discovery and many of the records he sought to review were not related to any issues in this case. Dkt. No. 56 at 10.

It appears that the plaintiff seeks relief because his institution has not let him access his institution records as quickly as he would like. The plaintiff has not stated a reason for the court to interfere with prison administration, and in any event, the law generally does not authorize courts to interfere in prison administration. The court will deny the plaintiff's motion. If the plaintiff needs more time to file a dispositive motion, or to respond to one, he may file a motion for extension of time.

## V.     Motion for Order (Dkt. No. 53)

The plaintiff's next motion consisted of a single sentence, asking the court to let him change and correct the full name of the defendant to Deion Marquez (presumably rather than "Correctional Officer Marquez," which is how the plaintiff referred to the defendant in the complaint). Dkt. No. 53. When defense counsel accepted service of the complaint, he identified the defendant as "Deion Marquez." Dkt. No. 28. That is the name on the docket and the name that the court has been using. There is no need for the plaintiff to correct or change anything. The court will deny as moot the plaintiff's motion for order.

## VI.    Motion to Compel (Dkt. No. 54)

Two weeks after the court received the plaintiff's first motion to compel, it received a second one in which he challenged the adequacy of the defendant's

8

responses to some of his other discovery requests. Dkt. No. 54 at 1. The defendant responded that defense counsel and the plaintiff had had "numerous" phone conversations in which counsel tried to explain why the plaintiff's requests were unreasonable, or tried to gain a better understanding of why the plaintiff believes some of things he believes. Dkt. No. 56 at 2-3. The defendant states that these conversations have been largely unsuccessful. Id. at 3. The court addresses the plaintiff's specific discovery disputes below.

The first discovery request is from the plaintiff's first set of interrogatories. Dkt. No. 54 at 2. It reads:

> REQUEST NO. 2: Defendant Marquez state your version of events from the 7-4-23 Incident Regarding plaintiff's suicide attempt alleged in this lawsuit.

> RESPONSE: Counsel for defendant OBJECTS to this request on the grounds that it [is] broad, vague, and requires speculation on defendant's part for what plaintiff is seeking.

Id. The plaintiff contends that the defendant's response is evasive, unresponsive and incomplete. Id. The defendant responds that defense counsel explained to the plaintiff that this request covered too much information for a single interrogatory. Dkt. No. 56 at 3. He explains that such a broad interrogatory is like the plaintiff submitting a discovery request asking the defendants in every case to "tell me everything you know and everything you did concerning the incidents alleged in this lawsuit." Id. The court agrees. This interrogatory is too broad, and the plaintiff must narrow his discovery request by breaking it down into more specific questions. See Fed. R. Civ. P. 26(b), 33(a).

9

The next dispute relates to the plaintiff's second request for production of documents. Dkt. No. 54 at 4. It says:

> REQUEST NO. 1: Produce a document titled "interview/information request" dated 8-29-23, by the plaintiff that was sent to Mr. Grabowski that asked to review multiple video footage from 7-4-23, and, produce Mr. Grabowski's response to the 8-29-23 requests.
>
> RESPONSE NO. 1: Upon inspection and review, there are not documents responsive to this request.

Id. The plaintiff contends that the requested document does exist and that "proof is located at (see) (Dkt. No. 51, Exhibit A), so if the Defendant and his legal team want to lie about the requested document in question not existing (when it does exist) this dishonesty with the court and plaintiff needs to be sanctioned[.]" Id. The defendant responds that the Department of Corrections (DOC) does not keep copies of every document that incarcerated individuals submit and that routine documents often are simply answered and returned to the individual. Dkt. No. 56 at 4. The defendant states that this is especially true when the incarcerated individual is submitting requests to the wrong DOC entities, and the response to the individual simply tells him the correct person to contact, as happened with the alleged document the plaintiff references in his declaration. Id.

Dkt. No. 51, Exhibit A is a handwritten list created by the plaintiff titled "Excerpt of Log Book Video Evidence request for Preservation," with attached documents. One of the attached documents is an interview/information request dated August 9, 2023, addressed to Mr. Grabowski in records. Id. at 7. At the bottom of the request, someone whose signature appears to end with the

10

letter "G" wrote, "Records handles files, not video retention. Contact. Cp.t. Rozmarynowski." Id. So—as of August 2024, when the plaintiff filed Dkt. No. 51, Exhibit A, the plaintiff *had* the document he is saying that the defendant did not produce. It is not clear why the plaintiff is asking the defendant to produce a document the plaintiff already has. Regardless, the defendant has explained why the *defendant* may no longer have it. The court cannot order the defendant to provide the plaintiff with a document the defendant does not have, especially when the plaintiff already has it.

The next dispute relates to the plaintiff's second request for production of documents. Dkt. No. 54 at 6. It reads:

> REQUEST NO. 2: The plaintiff sent a video evidence preservation request to the G.B.C.I. Litigation Coordinator on 7-25-23, a total of (3) pages asking to preserve multiple video footage from 7-4-23, produce the Litigation Coordinator's response to plaintiff's request which is on a document titled "interview/information request."
>
> RESPONSE NO. 2: Plaintiff may refer to the document at DOC-0042-0044.

Id. The plaintiff says that the documents the defendant provided are not the documents he requested. Id. The plaintiff refers to his Exhibit E, dkt. no. 54-1, which he says is the document he requested. Dtk. No. 54 at 7. He says he needs the defendant to produce it because the plaintiff then can send the defendant "a set of interrogatory, admissions, to have them swear to the documents being verified as true and correct." Id. The plaintiff states that he needs the document to attach to his summary judgment motion, and his motion for sanctions for spoliation of video evidence, to show that the missing videos from the defendant's body camera from 7-4-23 and the Green Bay RHU

wall camera footage from that day, do exist. Id. The defendant responds that he

produced the documents he believed the plaintiff had requested. Dkt. No. 56 at

4-5. The defendant states that he is not sure which documents the plaintiff

wants. Id. at 5.

Request No. 2 is not a question, or an actual request. It is a statement—

it says that on July 25, 2023, the plaintiff sent a request for preservation of

video to the Green Bay litigation coordinator. Is the plaintiff asking for a copy of

that request? Is he asking for video footage from July 4, 2023? Is he asking

only for the litigation coordinator's response? The court cannot tell from the

wording of the request. It appears the defendant could not tell, either. The

solution to this problem is not for the plaintiff to demand that the court compel

the defendant to comply with a request the defendant does not understand—it

is for the plaintiff to more clearly explain what it is he is asking for.

The next dispute relates to the plaintiff's second request for production of

documents. Dkt. No. 54 at 9. It reads:

> REQUEST NO. 3: The plaintiff sent a video evidence preservation
> request on 7-25-23, to Mr. Grabowski asking for multiple videos to
> be preserved from 7-4-23 and Mr. Grabowski replied on 6-26-23.[3]
> Please produce this document described above (a total of 3 pages).
>
> RESPONSE NO 3: Upon inspection and review, there are no retained
> documents responsive to this request.

Id. The plaintiff contends that the defendant's response is a lie, and he points

to his Exhibit D, which he says is the requested document. Id. The plaintiff

says he needs the documents to attach to his "motion to sanction for spoliation

---

[3] The court assumes this is a typo and the plaintiff means 7-26-23.

12

motions" and to support his motion for summary judgment. Id. The defendant contends the plaintiff's discovery requests contain errors and inconsistencies that do not allow him to fulfill the plaintiff's requests, even if the DOC had the responsive documents. Dkt. No. 56 at 5. The defendant states that the plaintiff misstates the defendant's position; he emphasizes that the defendant did not say that the documents did not exist, but that the defendant had no retained documents to produce. Id. The defendant opines that the plaintiff is fixated on the video preservation *requests*, but that those are immaterial, counsel repeatedly has tried to explain to the plaintiff. Id. The defendant concedes that the plaintiff asked for relevant video be preserved, but he contends that the defendant preserved all the video he could possibly preserve, then produced all of that video to the plaintiff. Id. Again, the plaintiff appears to be asking the defendant to produce a document he already has. And defense counsel is correct—the *evidence* of what happened on July 4 is the *video*, not the plaintiff's requests to preserve the video. The fact that the plaintiff asked the defense to preserve video is not relevant to what the videos show.

The plaintiff says his next dispute is from his second request for production of documents. Dkt. No. 54 at 10. It reads:

> REQUEST NO 4: Produce any and all documents that were responded to by "Paul" that were from plaintiff's request for video preservation to save videos from 7-4-23.

> RESPONSE NO. 4: Plaintiff may refer to the document at DOC-0045-0058.

Id. at 10. The plaintiff contends that the defendant has not produced the requested documents which he says will show that the missing videos exist

13

because the prison staff received the plaintiff's evidence preservation letters, responded to the letters and saved the videos that are now missing. Id. Again, the plaintiff has not demonstrated how his video preservation requests are relevant. The defendant concedes that the plaintiff requested that videos of the incident be preserved; there is no dispute over that fact, which means the plaintiff's *requests* are not relevant.

The next dispute is from the plaintiff's third request for admission. Dkt. No. 54 at 12. It reads:

> REQUEST NO. 3: Defendant Marquez in regards to plaintiff's allegation made on 7-4-23 that you walked off on him after he made suicidal statements, admit that because the plaintiff was not written a conduct report for lying about staff (rule violation) that the plaintiff did not lie on you regarding this particular allegation.

> RESPONSE NO. 3: Counsel objects to this request on the grounds that it is based on a false premise and assumes facts not in evidence.

Id. The plaintiff contends that the defendant is evading the request. Id. at 12-13. The defendant responds that the plaintiff erroneously concludes that the fact he did not receive a conduct report for lying on July 4, 2023 means everything he said must be the truth. Dkt. No. 56 at 5. The defendant states that this is obviously untrue. Id. The court agrees. There are many reasons prison staff may not issue a conduct report (perhaps they think the incarcerated person was mistaken or confused or suffering from mental health issues rather than lying, for example); the fact that they do not do so does not prove that what the plaintiff says happened actually happened.

The next dispute is from the plaintiff's third request for admissions. Dkt. No. 54 at 14. It reads:

REQUEST NO 4: The background is that while prisoner Bobby Johnson (or spelled Bobby Jhonson) was at GBCI – RHU and he told staff he was suicidal and then recanted and received a conduct report for lying to staff. Admit that prisoner Bobby Johnson did get issued a conduct report because he lied to staff that he was suicidal.

RESPONSE: Counsel for defendant objects to this request on the grounds that it requests information that is not relevant to the claims plaintiff was allowed to proceed on in this case.

Id. The plaintiff contends he needs an answer to this request to show that Green Bay has a practice of writing incarcerated persons up when they lie about being suicidal. Id. He says states that if he had been lying, he would have received a conduct report. Id. at 15. Whether another incarcerated individual received a conduct report for saying he was suicidal and then recanting that statement is irrelevant to whether the *plaintiff* tried to kill himself.

The next dispute is from the plaintiff's third request for admissions. Id. at 17. It reads:

REQUEST NO. 1: Defendant Marquez admit on 07-4-23 the plaintiff alleged against you that you walked off on the plaintiff after he told you he was suicidal and was going to cut himself, and, plaintiff never received a conduct report for lying about staff under Rule violation doc 303.02 for making that type of allegation.

RESPONSE NO. 1: Counsel for defendant objects to this request on the grounds that it requests information that is not relevant to the claims plaintiff was allowed to proceed on in this case. notwithstanding and without waiving said objection, admit only that plaintiff did not receive a conduct report for conduct related to July 4, 2023.

Id. The plaintiff contends that the defendant's refusal to respond should be sanctioned. Id. But the defendant *did respond* to the discovery request. And this request is yet another way the plaintiff is attempting to get the defendant

15

to say that because the plaintiff did not get written up, everything the plaintiff says happened did happen—something the defendant cannot truthfully say

The last few pages of the defendant's response brief contain information about the plaintiff's video preservation requests and the institution's ongoing attempts to locate and preserve videos. Dkt. No. 56 at 6-10. Particularly relevant is defense counsel's detailed explanation of the defendant's attempt to produce all the video evidence the plaintiff has requested. The court quotes it here, because it is relevant to some of the motions the plaintiff since has filed.

<u>Preservation Requests and Video Retention in Plaintiff's Claim</u>

On July 4, 2023, Plaintiff submitted a video preservation request to Green Bay Correctional Institution (Green Bay) Litigation Coordinator Denielle Larie. In this request, the Plaintiff requested Green Bay retain multiple videos from the incident in this lawsuit. On August 1, 2023, Larie forwarded [the plaintiff's] video preservation request to Lieutenant Rozmarynoski who was one of the supervisors in charge of video preservation. On August 19, 2023, Lt. Rozmarynoski reached out to Inmate Complaint Examiner (ICE) Zachary Paul about the request. On August 28, 2023, ICE Paul responded to Lt. Rozmarynoski and Larie that he downloaded all available information for this incident, including body worn camera and institution videos. (Larie Decl. ¶¶ 1-6.)

<u>Defendant's Video Requests</u>

On Wednesday March 27, 2024, DOJ Advanced Paralegal Zoua Cha sent Larie an email requesting relevant video footage and other documents related to this case. When Larie received Paralegal Cha's video request, she searched the DAI folder via her work laptop the same day. That Friday, March 29, 2024, when Larie was working onsite at GBCI, she went to the security suite and checked the computer that contains all preserved video to search for the requested video. Her search produced videos related to this incident. She emailed Lt. Swiekatowski (ICE LTE/responsible for video preservation at GBCI) and he put all relevant videos in a folder for me to upload to ShareFile. (Larie Decl. ¶¶ 7-8.)

On April 1, 2024, Larie responded to Paralegal Cha informing Cha that videos were uploaded to ShareFile, a file sharing service that Corrections and the DOJ use to share documents. Larie also let Cha know that Larie believed there were additional videos and Larie would let Cha know when those videos were added to ShareFile. No body worn camera videos for Deion Marquez were discovered during this search. (Larie Decl. ¶¶ 9-10.)

Larie uploaded an additional video to ShareFile on April 2, 2024, and informed Paralegal Cha that there were three additional videos that would not play, and Larie was waiting on security to recover them. Larie reached out to Swiekatowski regarding the three videos that would not play. On April 8, 2024, Larie followed up with Swiekatowski regarding the three videos that would not play. Swiekatowski responded that he had spoken with Captain Cushing, who is another security staff member charged with video preservation. Swiekatowski explained that the way the videos were downloaded, no video was saved, and they would not be able to recover the videos any longer. On this same date, Larie emailed Cha to let her know that there were three videos that security staff were unable to recover. Larie does not know what these three videos contained and where security staff had attempted to save them. (Larie Decl. ¶¶ 11-14.)

On May 3, 2024, Larie received an email from Paralegal Cha stating that Cha was reviewing their past communications and it sounded like there were additional videos. Larie responded that there were additional videos, but security was unable to recover them. On June 14, 2024, Cha reached out asking Larie to conduct another search for videos. Larie contacted Swiekatowski for assistance and asked if there were any other possible locations to search for the video. Swiekatowski ended up locating multiple external hard drives that had additional video pertaining to this case (and many other videos unrelated to this case). He uploaded them for Larie to the DAI folder and she placed them on ShareFile. Larie and Swiekatowski also did another sweep on the Security Suite computer to confirm they had all the videos. (Larie Decl. ¶¶ 15-16.) On June 14, 2024, Larie also called Cha to inform her that staff were able to locate videos on an external hard drive. The videos were uploaded to ShareFile. There were no body worn camera videos for Deion Marquez on the hard drives. Swiekatowski and security were unable to confirm the origin of the external hard drives or who saved the videos to these hard drives. On June 28, 2024, Swiekatowski was able to locate a tier camera video footage. This video was uploaded to ShareFile. (Larie Decl. ¶¶ 17-19.)

In total, Larie sent 25 videos related to this case to the WI DOJ. This included 22 body worn camera videos, one handheld camera video, and two surveillance videos. There were no body worn camera videos for Deion Marquez. (Larie Decl. ¶ 20.)

On July 12, 2024, Cha informed Larie that DOJ had responded to Bergeron-Davila's discovery requests, and he could request to view the videos. Paralegal Cha uploaded the videos to ShareFile. As of September 16, 2024, [the plaintiff] had not submitted any requests to view the videos in this case of which Larie is aware. [The plaintiff] will have to submit timely requests to review videos to the Records Department so he may review any video that he wants to review. (Larie Decl. ¶¶ 21-23.)

On Friday September 13, 2024, Larie spoke with Cha on the phone about searching for additional videos in this case, specifically any body-worn-camera footage from Marquez. At Cha's request, Larie reached out to ICE Paul. On September 13, 2024, ICE Paul responded that he was certain he had retained all available body worn camera footage, so it was possible that Marquez did not have his camera turned on. To date, staff have been unable to locate any body worn camera video footage for Deion Marquez from July 4, 2023, or find any documentation indicating that any body-worn-camera footage for Marquez existed and should have been preserved. (Larie Decl. ¶¶ 24-26.)

There are also three videos that security staff were unable to recover. If staff do locate any additional videos related to this incident, the videos will be sent to the DOJ via ShareFile so they can be provided to [the plaintiff] for viewing. (Larie Decl. ¶¶ 27-28.)

Id. at 6-10.

The defendant reasonably and appropriately responded to the plaintiff's discovery requests. The court will deny the plaintiff's motion to compel.

## VII. Motion to Compel (Dkt. No. 60)

About a month after receiving the second motion to compel, the court received the plaintiff's *third* motion to compel the defendant to respond to his discovery requests. Dkt. No. 60 at 1-2. The plaintiff asserted that on August 4, 2024 and August 20, 2024, he had mailed defense counsel separate sets of

18

discovery demands. Id. at 1. He said that on September 24, 2024, he'd written defense counsel "In attempt to resolve Discovery Disputes" and saying that defense counsel had not responded to the two August discovery demands. Id. at 2. He said that as of October 6, 2024, he'd received only one response to his fourth request for admissions and that he had five discovery requests outstanding and unresponded-to. Id. The plaintiff asserted that he needed the discovery "to support his pending motions to compel, his upcoming motion to compel and to put together a motion to sanction for spoilation to video evidence, as well as the plaintiff needing the due Discovery request to support his motions for Summary Judgment." Id. at 3.

The plaintiff did not attach to this motion the August discovery demands, but he attached a document that appears to be a copy of his September 24, 2024 letter to defense counsel. Dkt. No. 61-1. In that letter, he says he needs the discovery so that he can prepare his motion for spoilation regarding "missing videos from 7-24-23 GBCI wall cam videos by strip cell area and all of Defendant Marquez's Body Cam Footage, all Footages from 12:00 pm up to 4:30 pm." Id. The defendant has not responded to this motion.

As the court has observed, the plaintiff does not explain what discovery he requested in his August 4 and 20, 2024 discovery demands. The September 24, 2024 letter he attached to the motion refers to video footage from July 3, 2023, which the defendant has told the court that he has searched for and been unable to locate. Because the plaintiff did not provide detail about what

19

discovery he requested that he claims he did not receive, the court will deny this motion.

## VIII. Motion to Compel (Dkt. No. 62)

The court received the plaintiff's *fourth* motion to compel ten days after it received the third one. Dkt. No. 62. He began this motion by stating that he had written to defense counsel several times to try to resolve discovery disputes, including on July 28, 2024, August 4, 2024 and August 20, 2024. Id. at 1-2. He says that there are "three Key videos" in dispute—defendant Marquez's body camera footage from July 4, 2023 from 12:30 p.m. to 4:30 p.m.; "RHU's 300 wing wall camera recording from times of 12:30 pm up to 4:30 pm;" and "GBCI's strip cage hearing room area's from times of 12:30 pm up to 4:30 pm." Id. at 2.

The plaintiff says that on July 25, 2023, he submitted a video preservation request and that inmate complaint examiner Paul told him that no such footage existed. Id. at 3. He says that he filed an inmate complaint "for the missing video of Defendant Deion Marquez's," and that Mr. DeGroot and Ms. Davidson "documented the videos in question were in face preserved." Id. The plaintiff insists that the defendant must turn over the video because DeGroot and Davidson's statements prove it exists. Id.

The plaintiff complains that although he asked for video footage to be preserved starting at 2:30 p.m., the defendant preserved only a few minutes of the Restricted Housing Unit's 300 wing wall video, starting at 3:00 p.m. Id. at 4. He says that "a couple of documents indicates that the Rhu 300 wing wall

20

cam Footage does exist from times and dates of 7-4-23 from 2:30 pm up to 4:30 pm;" he asserts that inmate complaint examiner Paul sent him a response on August 26, 2023 showing that his "time and Dates and locations were acknowledged and responded to as being preserved." Id. at 5. The defendant has not responded to this motion.

The plaintiff appears to believe that because he filed video preservation requests and was told by prison employees that they had preserved video, he has proven that the video he requests exists and that the defendants are refusing to provide it. That is not the case. An evidence preservation request requires prison employees to preserve whatever evidence exists. If the evidence did not exist at the time employees received the request, employees cannot preserve it. If employees preserve the evidence but that evidence is damaged, then the employees can produce only what they have—the damaged evidence.

The court has reviewed the preservation requests and responses the plaintiff attached to his motion. It is true that on July 25, 2023, the plaintiff submitted a request to preserve the RHU wall camera video. Dkt. No. 63-1 at 7. It also is true that "Paul" reviewed the request and appears to have put the date "8/26/23" in the field next to "Video was preserved." Id. But Paul does not say that he viewed the video, or that the video was capable of being viewed, or that it showed what the plaintiff says it shows. "Paul" simply wrote the date on which the video was preserved. And DeGroot and Davidson said exactly the same thing—that the plaintiff had asked for the video to be preserved and that it had been preserved. Id. at 10-11. The institution employees preserved

whatever there was to preserve, but defense counsel has explained that some of the videos were not able to be played and some were "unrecoverable." They continued to look for others.

As for footage from the defendant's body-worn camera, the plaintiff insists that it exists because he observed the defendant with the camera. Defense counsel, as an officer of the court, has advised the court prison employees have found no body-worn camera footage for the defendant. Counsel provided a declaration by Green Bay litigation coordinator Larie. Dkt. No. 57. Perhaps the defendant neglected to activate his body camera that day. Perhaps he did activate it and it malfunctioned. But the defendant cannot produce what does not exist, and what he cannot find.

Based on the defendant's filings, the court concludes that the defense had, as of the date of the plaintiff's fourth motion to compel, produced all of the video institution employees had been able to find. The defense has an ongoing obligation to produce any discovery that may surface going forward. The court will deny the fourth motion to compel.

## IX.    Motion for Emergency Order and Motion for Time Extension (Dkt. No. 64)

A month and a half after it received the plaintiff's fourth motion to compel, the court received from the plaintiff a motion for emergency order and motion for time extension. Dkt. No. 64. The plaintiff said that he was at great risk of serious harm because on November 15, 2024, he was denied medical treatment when Green Bay staff agreed not to treat his "self-harm injury of a cable cord that plaintiff inserted in his arm and multiple angles and multiple

depths under ligaments, mus[c]les, in v[ei]ns and skin and tendons etc." Id. at 2. The plaintiff stated that he was placed in restraints because he could not remove the metal cable cord from his arm himself. Id. On November 16, 2024, staff allegedly told the plaintiff that the warden had approved Lieutenant Howath, a non-medical staff member, to cut the metal cable cord out of the plaintiff or the plaintiff's time on the restraint bed would be extended. Id. at 2-3. The plaintiff said he then agreed to let Howath cut the metal cable cord out of his arm, which Howath did using tweezers, a wire cutter and saline. Id. at 3. The plaintiff states that this made the injury worse. Id.

The plaintiff stated that Green Bay staff members now are making the plaintiff remove all metal that he stabs into himself on his own, which happened on November 25-26, 2024. Id. at 3-4. The plaintiff stated that he made a serious error when he was pulling and digging metal out and a piece broke off and is still in his arm. Id. at 4. The plaintiff said that he lacks medical skill to conduct surgery on himself and that prison staff is permitting his injury to fester with metal in his arm. Id. at 5. The plaintiff asked the court to interrupt the prison's dangerous practice of letting him treat his self-harm injuries. Id. He also asked the court to "address the security staff's surgery he did onto the plaintiff's arm as he practiced medicine without no medical license when he cut/pulled metal out of plaintiff's arm on 11-16-24." Id.

The defendant responds that the plaintiff's assertion that he was completely denied medical care on November 15 and 16, 2024 and November 25, 2024 "is incorrect and an outright lie to the Court." Dkt. No. 70 at 2. The

23

defendant states that the plaintiff has been receiving consistent and proper medical treatment for his repeated, ongoing self-harm issues. Id. at 3. The defendant has submitted a declaration from Green Bay's health services manager regarding the plaintiff's care, along with medical records. Dkt. Nos. 71, 71-1. The court's review of these records shows that the plaintiff has received care for his self-harm attempts. Id.; Dkt. No. 71-1.

Though he did not use the words, the plaintiff is asking the court for a preliminary injunction. A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Fahenm-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012), citing Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 589-90 (7th Cir. 2012).

The plaintiff's claim that he needs the court to intervene because his institution is not providing him care when he self-harms is not supported by the record evidence presented by the defendant. The plaintiff is not entitled to a preliminary injunction. The court will deny his motion.

24

**X.     Motion for Order on Pending Motions (Dkt. No. 66)**

Having not heard from the court for a few months, the plaintiff filed a motion asking for a timely ruling and for a copy of the docket. Dkt. No. 66. This order addresses the pending motions, so the court will grant this motion.

**XI.     Motion for Protective Order (Dkt. No. 69)**

The plaintiff filed a motion asking the court to provide him with a reply to his motion for an emergency order. Dkt. No. 69 at 1. The defendant filed his opposition brief a few days late, but he has filed it and sent a copy to the plaintiff. See Dkt. No. 70. The court will deny as moot the plaintiff's motion for order.

The plaintiff also asked the court to issue a protective order, asking that the defendant's response to his motion for emergency order be kept under seal because it will include his medical information. Dkt. No. 69. The day after the court received this motion from the plaintiff, the court received the defendant's response to the plaintiff's motion for emergency order, which includes a brief, a declaration and excerpts from the plaintiff's medical records. Dkt. Nos 70, 71, 71-1. These materials describe information similar to what the plaintiff described in his motion—that is, his self-harming activities and his interactions with Green Bay staff. The defendant has not filed a response to the plaintiff's request for a protective order

"Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." In re Specht, 622

F.3d 697, 701 (7th Cir. 2010). The Seventh Circuit has held that there is a general presumption that judicial records are public. <u>Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.</u>, 178 F.3d 943, 945 (7th Cir. 1999). That presumption "can be overridden only if . . . there is good cause for sealing a part or the whole of the record in that case." <u>Id.</u> (citations omitted). <u>See also</u> Civil Local Rule 79(d)(3) (E.D. Wis.).

The court received the plaintiff's motion for a protective order before it received the defendant's response to the plaintiff's motion for emergency order. The plaintiff put his medical condition at issue by filing this lawsuit and the motion for emergency order, and he has filed documents that contain information similar to the information in the defendant's filings. The plaintiff has not shown good cause for restricting the documents the defendant filed in response to the plaintiff's motion for emergency order.[4] The court will deny the plaintiff's motion.

## XII.  Motion for Order (Dkt. No. 72)

The court received from the plaintiff a motion asking the court to advise the defendant of his duty to respond to the plaintiff's motion for an emergency order. Dkt. No. 72 at 1. The court received this motion three days after it received the defendant's response to the plaintiff's motion for an emergency order. The court will deny this motion as moot.

---

[4] The medical records did contain the plaintiff's date of birth, but the defendant redacted it before filing the records.

The plaintiff also asked the court for an order regarding a video evidence preservation request he says he submitted to staff at Green Bay for incidents that occurred on November 15 and 16, 2024, when he put a metal cable cord in his arm and staff allegedly refused to treat it. Id. at 1. The court has denied the plaintiff's motion for emergency injunctive relief related to that incident. The claim at issue *in this case* stems from the plaintiff's July 4, 2023 self-harm incident and is not related to the November 2024 incident. The court will not address *in this case* any issues related to incidents that occurred at times other than the July 4, 2023 incident upon which the court allowed the plaintiff to proceed *in this case*. The court will deny the plaintiff's motion.

## XIII. Conclusion

The court **DENIES** the plaintiff's motion for order. Dkt. No. 46.

The court **DENIES** the plaintiff's motion for order. Dkt. No. 47. The court will send the plaintiff a copy of the court's order denying his motion preliminary injunction (Dkt. No. 45) along with this order.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 48.

The court **DENIES** the plaintiff's motion for order to view prison records. Dkt. No. 50.

The court **DENIES AS MOOT** the plaintiff's motion for order. Dkt. No. 53.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 54.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to compel. Dkt. No. 60.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 62.

27

The court **DENIES** the plaintiff's motion for emergency order. Dkt. No. 64.

The court **GRANTS** the plaintiff's motion for order on pending motions. Dkt. No. 66.

The court **DENIES** the plaintiff's motion for protective order. Dkt. No. 69.

The court **DENIES AS MOOT** the plaintiff's motion for order. Dkt. No. 69.

The court **DENIES** the plaintiff's motion for order regarding defendant's response and video evidence preservation. Dkt. No. 72.

Dated in Milwaukee, Wisconsin this 12th day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

28