UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAYMOND J. BERGERON DAVILA,

                           Plaintiff,

          v.                                    Case No. 23-cv-1260-pp

DEION MARQUEZ,

                           Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 76)
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL (DKT. NO. 79)**

Plaintiff Raymond J. Bergeron-Davila, who is incarcerated at Green Bay
Correctional Institution and is representing himself, filed a complaint alleging
that defendant Deion Marquez violated his constitutional rights. The court
screened the complaint and allowed the plaintiff to proceed on an Eighth
Amendment claim based on allegations that on July 4, 2023, the plaintiff told
the defendant that he was suicidal and was going to cut himself, but the
defendant walked away from the plaintiff's cell; the plaintiff alleged that he
then cut himself, causing injury. Dkt. No. 24 at 5. This order addresses the
plaintiff's motion for sanctions for spoliation of evidence, dkt. no. 76, and his
motion to compel, dkt. no. 79.

I.     **Motion for Sanctions (Dkt. No. 76)**

The plaintiff has filed a motion for sanctions for spoliation of evidence
based on the defendant's alleged destruction and loss of video evidence. Dkt.
No. 76 at 1. The plaintiff alleges that the defendant has not provided all the

1

video evidence he requested. Id. at 2. The plaintiff states that he requested RHU 300 wing wall videos from 12:30 p.m. to 4:30 p.m. on July 4, 2023, but that the defendant preserved only the wall camera video starting at 3:00 p.m. and ending a few minutes later. Id. The plaintiff also states that he requested the bodycam video from the defendant from the July 4, 2023 incident but says that video was not preserved. Id. The plaintiff contends that the court should order the defendant to pay him $20,000 "to deter from future conduct," enter default judgment and allow the plaintiff to argue in court that the defendant acted in bad faith to hide his misconduct of walking off on the plaintiff's suicidal statements and self-harm on July 4, 2023. Id. at 7.

The defendant responds that the court should deny the plaintiff's motion, as it did in its March 12, 2025 order. Dkt. No. 82 at 1. The defendant states that the plaintiff "renews his motion to compel that he has raised multiple times in this case, arguing that there should be body-worn-camera evidence from the Defendant and additional wing hallway video from the day of the incident." Id. at 1-2. The defendant also states that, "[a]s the Defendant and DOC have reiterated multiple times, there is no additional video and no evidence anyone ever destroyed any video, much less that someone destroyed video in bad faith." Id. at 2. The defendant refers to the court's prior order in which it denied the plaintiff's motion to compel the video and found that the defendant had "reasonably and appropriately responded to the plaintiff's discovery requests." Id. The defendant contends that sanctions are not

warranted because there is no evidence that any additional video footage ever existed and no evidence any video evidence was destroyed in bad faith. Id.

In reply, the plaintiff reiterates that he requested that the videos be preserved, and that the defendant's body-cam video and RHU 300 wing wall video were not preserved. Dkt. No. 83 at 2-3. He states that the RHU 300 wing's wall cam footage will show that the defendant had his body camera activated while talking to the plaintiff at his cell on July 4, 2023. Id. at 4. The plaintiff states that a deliberate decision was made to not produce the RHU 300 wing wall video for the time he requested and that this behavior "extend[s] into similar conduct regarding the loss and destruction to Defendant Marquez's body cam videos[.]" Id. at 6. The plaintiff contends that the court should sanction the defendant $20,000 and permit the plaintiff to present to a jury the destruction of the videos. Id.

On March 12, 2025, the court denied the plaintiff's motions to compel footage from the defendant's body-worn camera on July 4, 2023 and the RHU wall camera video from that date. Dtk. No. 78. The court quoted at length from defense counsel's explanation of the defendant's attempts to produce all the video evidence the plaintiff had requested and concluded that the "defendant reasonably and appropriately responded to the plaintiff's discovery requests." Id. at 16-18. In denying the plaintiff's motions to compel, the court addressed the plaintiff's requests to preserve the videos:

> The plaintiff says that on July 25, 2023, he submitted a video preservation request and that inmate complaint examiner Paul told him that no such footage existed. [Dkt. No. 62] at 3. He says that he filed an inmate complaint "for the missing video of Defendant Deion

3

Marquez's," and that Mr. DeGroot and Ms. Davidson "documented the videos in question were in fact preserved." Id. The plaintiff insists that the defendant must turn over the video because DeGroot and Davidson's statements prove it exists. Id.

The plaintiff complains that although he asked for video footage to be preserved starting at 2:30 p.m., the defendant preserved only a few minutes of the Restricted Housing Unit's 300 wing wall video, starting at 3:00 p.m. Id. at 4. He says that "a couple of documents indicate that the Rhu 300 wing wall cam Footage does exist from times and dates of 7-4-23 from 2:30 pm up to 4:30 pm;" he asserts that inmate complaint examiner Paul sent him a response on August 26, 2023 showing that his "time and Dates and locations were acknowledged and responded to as being preserved." Id. at 5. The defendant has not responded to this motion.

The plaintiff appears to believe that because he filed video preservation requests and was told by prison employees that they had preserved video, he has proven that the video he requests exists and that the defendants are refusing to provide it. That is not the case. An evidence preservation request requires prison employees to preserve whatever evidence exists. If the evidence did not exist at the time employees received the request, employees cannot preserve it. If employees preserve the evidence but that evidence is damaged, then the employees can produce only what they have—the damaged evidence.

The court has reviewed the preservation requests and responses the plaintiff attached to his motion. It is true that on July 25, 2023, the plaintiff submitted a request to preserve the RHU wall camera video. Dkt. No. 63-1 at 7. It also is true that "Paul" reviewed the request and appears to have put the date "8/26/23" in the field next to "Video was preserved." Id. But Paul does not say that he viewed the video, or that the video was capable of being viewed, or that it showed what the plaintiff says it shows. "Paul" simply wrote the date on which the video was preserved. And DeGroot and Davidson said exactly the same thing—that the plaintiff had asked for the video to be preserved and that it had been preserved. Id. at 10-11. The institution employees preserved whatever there was to preserve, but defense counsel has explained that some of the videos were not able to be played and some were "unrecoverable." They continued to look for others.

As for footage from the defendant's body-worn camera, the plaintiff insists that it exists because he observed the defendant with the camera. Defense counsel, as an officer of the court, has advised

4

the court prison employees have found no body-worn camera footage for the defendant. Counsel provided a declaration by Green Bay litigation coordinator Larie. Dkt. No. 57. Perhaps the defendant neglected to activate his body camera that day. Perhaps he did activate it and it malfunctioned. But the defendant cannot produce what does not exist, and what he cannot find.

Based on the defendant's filings, the court concludes that the defense had, as of the date of the plaintiff's fourth motion to compel, produced all of the video institution employees had been able to find. The defense has an ongoing obligation to produce any discovery that may surface going forward. The court will deny the fourth motion to compel.

Dkt. No. 78 at 20-22.

A spoliation sanction is proper only when a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent. Trask-Morton v. Motel 6 Operating L.P., 534 F.3d 672, 681 (7th Cir. 2008). A showing of bad faith also is necessary. Federal Rule of Civil Procedure 37(e); Bracey v. Grondin, 712 F.3d 1012, 1019 (7th Cir. 2013); see also Mathis v. John Morden Buick, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998) ("That the documents were destroyed intentionally no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information.").

The plaintiff has satisfied the requirement to show that the defendant had a duty to preserve evidence based on the requests he submitted to preserve video evidence related to the incident. But the plaintiff has not submitted evidence that the defendant destroyed the video evidence in bad faith to hide adverse information. As detailed in the court's prior order denying the plaintiff's motions to compel, the defense has established that it has produced all the video evidence that has been preserved. The plaintiff is not

5

entitled to sanctions. See Bracey v. Grondin, 712 F.3d 1012, 1018–20 (7th Cir. 2013) (district court did not abuse discretion in declining to instruct jury to draw adverse inference since plaintiff incarcerated individual lacked evidence that defendant prison guards had destroyed video of altercation for purposes of hiding its contents); see also Trask–Morton, 534 F.3d at 681-82 (affirming denial of spoliation sanction where no evidence of bad faith); Rummery v. Ill. Bell Tel. Co., 250 F.3d 553, 558 (7th Cir. 2001) (affirming the denial of a motion for sanctions when the moving party "offered no evidence, other than his own speculation, that [documents] were destroyed to hide discriminatory information"); Earl v. Jewel Food Stores, Inc., Case No. 23-2670, 2024 WL 4601043, at *3 (7th Cir. Oct. 29, 2024) (no reason to infer bad faith based on unrebutted evidence that party could not locate original despite a diligent multi-week, several-person search).

## II.     Plaintiff's Motion to Compel (Dkt. No. 79)

In his motion to compel, the plaintiff asks the court to order the defendant to produce body camera footage from the plaintiff's cell front from 9:00 p.m. to 10:50 p.m. on July 30, 2024. Dkt. No. 79 at 3. The plaintiff states that the defendant objected to the request as not relevant to the claim in this case. Id. The plaintiff contends that the footage is relevant because it will "show the defendant's verbal acknowledgement that he indicated he was deliberately indifferent to the plaintiff's suicide activities and suicidal statements on July 4th of 2023." Id. at 4.

6

Next, the plaintiff asks the court to order the defendant to respond to his request for "any and all GBCI-RHU Body Cameras being worn and activated" on July 4, 2023. Id. at 5. He says that the defendant objected to this request as excessively broad and disproportionate to the needs of this case. Id.

The plaintiff also contends that there is a discovery dispute as to the defendant's refusal to produce a complete response to the plaintiff's second set of interrogatories. Id. at 7. He states that when prison staff delivered his mail to him on October 14, 2024, it was missing four pages from defendant's discovery response and that the defendant has refused to write back to the plaintiff about the missing pages. Id.

The court will deny the plaintiff's motion to compel the defendant to provide all Green Bay RHU body cameras worn and activated on July 4, 2023. The parties agree that the plaintiff requested video evidence that the defendant has not located. It appears that this video evidence does not exist. There is no dispute that the plaintiff requested this video evidence. This discovery request is redundant and unnecessary.

On the other hand, the court will grant the plaintiff's motion to compel the defendant to produce his body camera footage from the plaintiff's cell front from 9:00 p.m. to 10:50 p.m. on July 30, 2024. The plaintiff avers that on July 30, 2024 between 9:00 p.m. and 10:50 p.m., the defendant told him that he "let [the plaintiff] make suicidal statements, cut [himself] and [the defendant] overheard/saw but disregarded it and left [the plaintiff's] cell # 300 front on the 7-4-23 incident[.]" Dkt. No. 80 at ¶3. As described, this body camera video is

7

relevant to the plaintiff's claim and the court will grant the plaintiff's motion to compel the defendant to produce it.

In response to the plaintiff's assertion that the mail he received on October 14, 2024 was missing pages, the defendant states that counsel has sent the plaintiff a copy of defendant's second interrogatory responses. Dkt. No. 82 at 1-2. Because the defendant has mailed his discovery response to the plaintiff, the court will deny the plaintiff's motion to compel the defendant to produce the missing pages.

## III. Conclusion

The court **DENIES** the plaintiff's motion for sanctions for spoliation of evidence. Dkt. No. 76.

The court **GRANTS IN PART AND DENIES IN PART** the plaintiff's motion to compel. Dkt. No. 79. The court **GRANTS** the motion as to the plaintiff's request that the defendant produce his body camera footage from the plaintiff's cell front from 9:00 p.m. to 10:50 p.m. on July 30, 2024. The court **DENIES** the plaintiff's motion to compel in all other respects.

Dated in Milwaukee, Wisconsin this 14th day of May, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

8